IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2023

**RAY L. MOREHEAD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-02533, C1704521   W. Mark Ward, Judge**

**_____**

**No. W2022-01215-CCA-R3-PC**
**_____**

The Petitioner, Ray L. Morehead, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel and that his guilty pleas were unknowing, unintelligent, and involuntary.  Based on our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JILL BARTEE AYERS, J., joined.

Roberto Garcia, Jr., Memphis, Tennessee, for the appellant, Ray L. Morehead.

Jonathan Skrmetti, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Gavin Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 1, 2017, the Shelby County Grand Jury returned a two-count indictment that charged the Petitioner with rape, a Class B felony, and sexual battery by an authority figure, a Class C felony, based on acts committed against the Petitioner's stepdaughter.  On June 5, 2020, the Petitioner pled guilty to both counts in the Shelby County Criminal Court. Pursuant to the terms of his negotiated plea, he was sentenced to ten years for each conviction with the sentences to be served concurrently with each other and concurrently

with his sentence for a prior Nebraska conviction involving the same victim as well as a second victim. At the guilty plea hearing, the Petitioner's trial counsel stipulated to the following factual basis for the pleas:

> Had this matter gone to trial, State's proof would have been that on or about June 10, 2016, while visiting Memphis for a conference, the victim in this case advised that her step dad [the Petitioner] and she were at the Peabody Hotel between April 1ˢᵗ and April 7ᵗʰ of 2015. He forced her to perform oral sex by sticking his penis in her mouth and moving it backwards and forwards. This happened twice. He also touched her breasts and her vaginal area.

On May 10, 2021, the Petitioner filed a pro se petition for post-conviction relief in which he raised several claims, including ineffective assistance of counsel and involuntary and unknowing guilty pleas. In the pro se petition, he alleged that trial counsel was deficient in his representation, leading to the entry of involuntary and unknowing guilty pleas, by not ensuring that the profoundly deaf Petitioner received a battery for his hearing aid or otherwise establishing adequate communications with him. The Petitioner alleged that his inability to communicate with trial counsel, to hear the guilty plea proceedings, or to understand the American Sign Language ("ASL") interpreter provided for him resulted in his entry of involuntary and unknowing guilty pleas. In an amended petition filed after the appointment of post-conviction counsel, the Petitioner alleged that "his skillset in ASL was limited[,]" and that his "right to have an attorney represent him at critical stages was violated [by] his inability to properly communicate with trial counsel." He further alleged that, were it not for trial counsel's failure to provide a battery for his hearing aid, he would have gone to trial.

At the post-conviction evidentiary hearing, the Petitioner testified that he and trial counsel, who represented him through the public defender's office, had a communication problem. He explained that his hearing aid battery was dead when he arrived at the jail and that without it, he was unable to hear. When asked if he would be able to hear if someone was one foot in front of him, he responded that he "would hear a noise." He said his first meeting with trial counsel was frustrating because he had to repeatedly ask trial counsel to speak up. He stated that he met with trial counsel six or seven times but was unable to communicate with him in their meetings. He was unable to call trial counsel on the telephone due to his hearing problem, so he tried to communicate with him by writing letters. He recalled that he sent a total of four letters to trial counsel. He testified that trial counsel gave him a discovery packet but never discussed it with him because they were unable to communicate. Trial counsel also never told him he was going to get an

investigator and never told him whether he had communicated with the victim and the victim's mother.

The Petitioner testified that trial counsel eventually used an ASL translator for their final three meetings, which included the guilty plea hearing. He said he could function with ASL but was not fluent and in a legal setting was "not good at it at all." He stated that he learned ASL in early 2018 in an informal setting from a deaf friend, with whom he communicated at only a basic level. Moreover, by the time he entered his guilty pleas after spending over a year in jail, his ASL skills had diminished. Therefore, although an ASL interpreter was present at the guilty plea hearing, he "had difficulty understanding the translator and [ ] just wasn't comfortable with the idea of taking it to trial at that time." When asked if he felt that trial counsel provided ineffective assistance because he did not provide a hearing aid, the Petitioner responded, "[a]bsolutely."

On cross-examination, the Petitioner testified that trial counsel tried to talk to him during their six or seven meetings, but he was unable to hear trial counsel. He then said that when they were discussing the charges, trial counsel showed him the paperwork. Asked to explain what he meant by "discussing," he replied that "[d]iscussing it in this case would be I'm basically reading his body language or whatever." Upon questioning by the post-conviction court, the Petitioner testified that he could speak without his hearing aid and tried to talk to trial counsel but was unable to hear trial counsel's responses.

The Petitioner testified that when trial counsel showed him the discovery packet, he asked trial counsel questions about what was going on. He said that trial counsel tried to explain it to him but he had to ask trial counsel to raise his voice so that he could hear him. Trial counsel raised his voice "[f]or a little while" and he could hear trial counsel "[f]or just a tiny bit[.]" The Petitioner acknowledged that he and trial counsel had some discussion about his guilty plea conviction in Nebraska that involved similar facts. Upon questioning by the post-conviction court, the Petitioner testified that, in the Nebraska case, he was represented by an attorney and entered a guilty plea to sexual assault of a child in exchange for a five-year sentence. He said he had a hearing aid at that time, and that his attorney explained to him his constitutional rights. He stated that the Nebraska trial judge probably also explained his rights but indicated that he could not recall due to the passage of time.

At the request of the post-conviction court, the Petitioner marked with a yellow highlighter on a transcript of the guilty plea hearing the sections that he had not understood at the time he entered his pleas. The transcript, admitted as an exhibit to the hearing, shows that the Petitioner highlighted the portion in which the trial court asked if he understood that he would have to register as a sex offender and would be subject to community

supervision for life. The Petitioner then testified that he originally thought he would be subject to community supervision for ten years and did not understand that it was for life until the trial court explained it to him at the guilty plea hearing. Upon further questioning by the post-conviction court, the Petitioner acknowledged that he understood the plea agreement, including that he would be subject to community supervision for life. He said, however, that he "didn't feel like [he] had any choice but to accept it." The Petitioner explained that if he had not accepted the plea agreement, he would have "gone back to jail and sat there for another year."

Upon further direct examination, the Petitioner testified that his conversations with trial counsel lasted less than five minutes. He said he did not think he had any other option than to plead guilty due to trial counsel's ineffective representation. Upon questioning by the post-conviction court, the Petitioner testified that he had a high school diploma and a two-year associate's degree in "[c]omputer technology, telecommunications." He stated that after he pled guilty in the instant case, he returned to Nebraska to complete the approximate six weeks that remained on his five-year sentence for his Nebraska conviction. When the post-conviction court asked if his testimony was that he pled guilty because he did not want to delay the court process, he agreed, testifying:

> That's correct, sir. I mean, again, I'd already been sitting in jail for a year. I couldn't hear anything, right? So, I'm sitting there, I can barely have conversations with people. It's - - it wears on you. Okay? It's psychologically exhausting.

The Petitioner testified that he did not ask the trial court for a hearing aid because he did not know what he was allowed to say to the trial court. Furthermore, he thought that trial counsel was supposed to "look out for [his] interests."

Trial counsel, a twenty-four-year employee of the public defender's office who was called as a witness by the Petitioner, testified that he represented the Petitioner through the entry of his guilty pleas in 2020. He said he had problems communicating with the Petitioner due to the Petitioner's inability to hear him. The Petitioner told him that he needed a battery for his hearing aid, and trial counsel asked the chief jailer if he could bring batteries into the jail for the Petitioner. The chief jailer said no, and trial counsel then asked if there was anyone at the jail who could provide the Petitioner with a battery. The response was that "they would look into it but it just never got done." Trial counsel testified that he eventually got an ASL translator to help in his communications with the Petitioner, although the Petitioner told him that he was not very good at ASL. He said he still had problems communicating even with the interpreter, and that he and the Petitioner "ha[d] to write stuff down, send notes back and forth." Trial counsel identified his handwriting on

- 4 -

a note he wrote to the Petitioner during the guilty plea hearing, which stated: "I'm explaining to you the rights you're giving up in order to settle the case. You can testify at trial or not, and if you did not, the jury could not use your silence to convict you." Trial counsel acknowledged that the note did not include a complete list of the Petitioner's constitutional rights but said it was "the one [the Petitioner] didn't understand."

Trial counsel testified that he met with the Petitioner "[s]everal times, some with interpreters, some not." He said the meetings varied in length, with the meetings that involved interpreters lasting twenty minutes or more. He stated that he had an interpreter with him when he advised the Petitioner of his rights, and that the Petitioner appeared to understand. He elaborated that he and the Petitioner together reviewed the written plea waiver in detail: "Yeah. I mean, everything is written in the plea waiver[,] and we went over that, basically, word-for-word. And when he said he didn't understand something, that's when I would either ask the interpreter or write a note to him." Trial counsel could not remember if he used an investigator in the case. He said he did not contact the victim, but he did reach out via email to the Petitioner's attorney in Nebraska.

On cross-examination, trial counsel testified that it was the Petitioner's decision to plead guilty. He said he did not pressure or influence the Petitioner into accepting the plea deal; had the Petitioner wanted to proceed to trial, he would have set the case for trial. When asked by the post-conviction court whether he thought the plea deal was in the Petitioner's best interest, trial counsel replied that he did, and that the crux of the plea negotiations was whether the Petitioner could have his Tennessee sentence run concurrently with his sentence for his Nebraska case involving essentially the same facts. He stated that he told the Petitioner that he could "get something on the paperwork" reflecting concurrent sentences in Tennessee but could not control what happened in another state. The Petitioner "was trying to get the best possible deal, but he didn't seem too keen on fighting the case either."

On August 18, 2022, the post-conviction court entered an order denying the petition, concluding that the Petitioner failed to meet either the deficiency or prejudice prong of his ineffective assistance of counsel claim and that the Petitioner's guilty pleas were knowingly, intelligently and voluntarily entered. Thereafter, the Petitioner filed a timely notice of appeal to this court in which he argues that the post-conviction court erred in denying the petition.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) and *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Phillips*, 647 S.W.3d at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and

may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim"). In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. *Blankenship*, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant

and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* at 904-05.

In denying the petition, the post-conviction court found, among other things, that the Petitioner was "exaggerating his claimed deficiency with ASL[,]" that the Petitioner was a well-educated individual who had previously pled guilty to molesting the same victim after being fully informed of his rights, and that it was clear from the Petitioner's own testimony that he knew he had the option of going to trial but chose to plead guilty simply to avoid sitting in jail. The post-conviction court noted that trial counsel took steps to address the communication problems by engaging an ASL translator and communicating with the Petitioner in writing. The post-conviction court further noted the times during his evidentiary hearing in which the Petitioner acknowledged that he understood everything that occurred at the guilty plea hearing and indicated that he chose to plead guilty in order to avoid spending more time in jail. The post-conviction court, therefore, concluded that the Petitioner failed to prove either ineffective assistance of counsel or that his guilty pleas were coerced or involuntary.

The record supports the findings and conclusions of the post-conviction court. The transcript of the guilty plea hearing demonstrates that the Petitioner assured the trial court that he was entering his pleas knowingly, intelligently, and voluntarily and that he was satisfied with the representation of trial counsel. An admission by the petitioner that he entered his guilty plea voluntarily weighs in favor of finding a voluntary guilty plea. *See Franklin v. State*, No. M2021-00367-CCA-R3-PC, 2022 WL 852909, at *4 (Tenn. Crim. App. Mar. 23, 2022) (affirming finding of a knowing and voluntary guilty plea, in part, when "Petitioner told the court that he understood the plea agreement and the rights he waived by pleading guilty, that he was satisfied with counsel's performance, and that he was pleading guilty voluntarily."), *no perm. app. filed*. The Petitioner asked a question of the trial court about the lifetime supervision aspect of his guilty pleas, expressing that he thought it was a ten-year year period of supervision. However, when the trial court clarified that it was lifetime supervision, the Petitioner indicated that he understood and accepted that condition.

At the post-conviction evidentiary hearing, the Petitioner acknowledged that he understood everything that was said during the guilty plea hearing. He further acknowledged that he had previously pled guilty in Nebraska to a similar charge at a time when he was represented by counsel and had the benefit of a working hearing aid, and that his Nebraska attorney, as well as likely the Nebraska judge, reviewed with him his constitutional rights. The Petitioner testified that he wrote trial counsel letters, and trial counsel testified that he passed notes back and forth with the Petitioner and reviewed "word

for word" the written guilty plea waiver.  Finally, trial counsel testified that it was the Petitioner's decision to plead guilty and that he appeared to understand his guilty pleas.

The Petitioner argues on appeal that the prejudice prong of his ineffective assistance of counsel claim should be presumed due to his hearing disability.  Specifically, he asserts that his hearing disability, which prevented him for communicating with trial counsel or hearing the proceedings, "made it so that not even a competent attorney could effectively advise and represent [him]."  In *United States v. Cronic*, 466 U.S. 648, 658 (1984), the United States Supreme Court described three situations in which prejudice should be presumed because the circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  466 U.S. 648, 658 (1984).  Those circumstances include when the conditions are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60.

We disagree that such circumstances existed in this case.  The Petitioner's testimony established that he was, in fact, able to communicate with trial counsel, either by having trial counsel raise his voice, through writing, or through the ASL interpreter.  The Petitioner's testimony also established that he understood his negotiated plea and what transpired in the guilty plea hearing and made the informed choice to plead guilty to avoid having to spend more time in the county jail.  We, therefore, conclude that the post-conviction court properly denied the petition for post-conviction relief.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
JOHN W. CAMPBELL, SR., JUDGE

- 9 -